## GLENN v. CITY OF ARDMORE.

No. 1664.    Opinion Filed March 19, 1912.

(122 Pac. 658.)

1.  **STATES—Admission—Effect.** Plaintiff sued the city of Ardmore for injuries and sickness alleged to have been caused by a stagnant pool of water permitted by the city to remain or stand on a vacant lot adjacent to plaintiff's place of residence in said city, said pool of water alleged to have been caused by the city's having filled up and dammed a draw or drainage channel running through the city; such filling or damming having been done by the city in 1905, and such injuries and sickness having been sustained by plaintiff in 1906.    Held, that if plaintiff had a cause of action against the city for the matters complained of such cause of action arose under and must be defined and governed by the provisions of the statutes of Arkansas then in force in the Indian Territory, and not by the statutes of Oklahoma, although the suit was not filed until after statehood.

2.  **STATUTES — Construction — Adoption of Provisions Previously Construed.**    The act of Congress May 2, 1890 (Act May 2, 1890, c. 182, 26 Stat. 81), putting in force division 1 of chapter 29, Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, c. 15), put in force the construction and interpretation placed thereon by the Supreme Court of Arkansas prior to the adoption of such statute by Congress.

3.  **MUNICIPAL CORPORATIONS — Torts — Statutory Provisions.**    Under the provisions of chapter 29, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 15), relating to municipal corporations and defining the powers and duties of cities and towns, and under the interpretation and meaning given thereto by the Supreme Court of Arkansas, while the cities and towns have the power and are charged with the duty of preventing any dangerous or unhealthful conditions or nuisances within their corporate limits, yet they are not liable in an action for damages for negligence in failing to exercise such powers or discharge such duties.

(Syllabus by Harrison, C.)

*Error from District Court, Carter County;*

*S. H. Russell, Judge.*

Action by L. N. Glenn against the city of Ardmore. Judgment for defendant, and plaintiff brings error. Affirmed.

This action was begun April 26, 1908, in the district court of Carter county. The plaintiff's petition contains in substance the following allegations: That he is a resident of the city of Ardmore and that the defendant, the city, is a municipal corporation incorporated under the laws in force in that part of the state formerly the Indian Territory, and now existing under the laws in force in the state of Oklahoma. That at the times mentioned in his petition plaintiff was the owner of lot 1, block 198, in the defendant city, the same being the northwest corner lot in said block, fronting D street, which runs north and south on the west of said lot, and lying along Sixth avenue, which runs east and west on the north side of said lot. That he purchased same about July 15, 1905, and moved onto it in November, 1905. That at the time he purchased the lot, and prior to that time, there had been a draw, or depression in the land which constituted a draw, which entered said lot about the northeast corner, running in a southwesterly direction across the eastern half of said lot and diagonally in the same direction across the lot immediately south of plaintiff. That such depression or draw afforded the means of drainage for the water accumulating on a number of blocks lying to the northeast of plaintiff's lot, and at the time of plaintiff's purchase of said lot, and prior thereto, had been sufficient to carry off all the water falling upon or accumulating upon the portion of ground drained by said draw. But that, between the time plaintiff purchased same and the time he moved onto same with his family, the authorities of defendant city in grading the streets had filled in such draw at a point on D street, south of plaintiff's lot, in such a manner that it prohibited such draw from carrying off the water and caused it to back up on the lot lying south of plaintiff and to extend over on plaintiff's lot. That in 1906, or during the summer and fall of 1906, the water in said draw, by reason of its being dammed and unable to escape through the draw, accumulated on the lot south of plaintiff and on plaintiff's lot and stood there until it became stagnant and poisonous, resulting in malarial

poison and sickness in plaintiff's family. That plaintiff at different times informed the defendant, through its officers, mayor, alderman, and street commissioner, of the stagnant condition of said pool and requested the city at divers times to drain the same so as to relieve himself and family from the poison and malaria which might be caused thereby.

He further alleges that in the fall of 1906 he had a great deal of sickness in his family, was sick himself for a number of weeks, causing considerable loss of time from his work; he being a carpenter and supporting himself by his trade, and necessitating considerable expenditure for medical attention and treatment; all of which was caused by the malarial poisons from the stagnant pool of water complained of—and asked damages in the sum of $85 paid out for doctor and drug bills, the sum of $257.30 for loss of time, and the further sum of $5,000 for injury done to his property and damage to the health and comfort of himself and family.

The defendant city answered denying generally and specifically all the material allegations in the plaintiff's petition. On May 17, 1909, the cause was tried. A jury was impaneled and sworn to try the cause, but at the conclusion of plaintiff's testimony defendant demurred to plaintiff's evidence and moved the court to instruct the jury to return a verdict in favor of defendant city, which demurrer was sustained, and the court instructed the jury to return a verdict in favor of the city, pursuant to which instruction the jury returned a verdict in favor of the city. Whereupon the plaintiff presented motion for a new trial, which was overruled by the court, and judgment rendered in conformity with the verdict. From which judgment and order overruling motion for a new trial, the plaintiff appeals, complaining: First. That the said court erred in sustaining the demurrer of the defendant in error to the case of the plaintiff in error, as made by the pleadings and the evidence, and in instructing the jury under the pleadings and evidence in the cause to return a verdict for the defendant in error. Second. That the said court erred

in not overruling the demurrer of defendant in error to the case of plaintiff in error, as made by the pleadings and the evidence. Third. That the said court erred in instructing the jury to return a verdict for the defendant in error. Fifth. That the said court erred in overruling the motion of the plaintiff in error for a new trial. Sixth. That the said court erred in refusing to grant the plaintiff in error a new trial.

*Johnson & McGill,* for plaintiff in error.

*J. B. Moore,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). The foregoing assignments of error, whether taken separately or collectively, address themselves to the one primary question "whether in law the city was liable for the damages complained of," and a determination of this question decides the case. But to determine this one question two propositions are to be considered: First, is the city in such cases made liable by law? Second, if liable in *any* case, was the evidence in *this* case sufficient to warrant a judgment in plaintiff's favor? If, under the law, the city is not liable in any such case, then the sufficiency of the evidence need not be considered, and, inasmuch as different acts and statutes have been in force during the time from the date of the alleged injuries to the date of the filing of this suit in that portion of the state in which the defendant, city of Ardmore, is situated, we must ascertain what law was in force at the time the injuries were received, in order to determine the city's liability.

It is alleged in the petition, and maintained by the evidence, that plaintiff purchased the lot in question in July, 1905, and that he moved onto it in November, 1905. That between these dates the filling in, or the damming the drainage which caused the alleged sickness, was done by the city. That during the summer and fall of 1906, because of this filling in and obstruction of drainage made by the city, the water accumulated and stood on plaintiff's property and the adjacent lot until it became

stagnant and poisonous, thereby causing the sickness complained of, and that such sickness occurred during the fall and winter of 1906. This being true, then whatever cause of action plaintiff had must have accrued before statehood and under the law in force in the Indian Territory at the time.

The act of Congress May 2, 1890, c. 182, 26 Stat. 81, put in force in the Indian Territory certain laws of the state of Arkansas, among which was chapter 29, division 1, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 15), which relates to municipal corporations, regulates the incorporation of cities and towns, and defines their duties and powers. This statute was in force in the Indian Territory at the time the damages complained of were sustained, and, if the plaintiff had a cause of action for such damages, such cause of action arose under, and must be defined and governed by, such statute. It will be observed that, although these statutes clearly define the powers and duties of cities and towns, yet they do not provide for liability in a private action for negligence in failure to exercise such powers or discharge such duties. The statutes have been construed by the Supreme Court of the state of Arkansas to mean that cities and towns were not liable in damages in such cases in the absence of a statute expressly creating a liability. *City of Arkadelphia v. Windham,* 49 Ark. 139, 4 S. W. 450, 4 Am. St. Rep. 32 (May 7, 1887), reaffirmed and followed in *City of Ft. Smith v. York et al.,* 52 Ark. 84, 12 S. W. 157 (October 5, 1889). This construction had been placed on these statutes prior to the time of their adoption and extension over the Indian Territory by act of Congress May 2, 1890. By adoption of such statutes, the meaning, force, and effect given thereto by the construction and interpretation of the Supreme Court of Arkansas was also adopted. This rule, it may be observed, might not obtain with full force where a legislative body merely copies the *language* of a statute in another jurisdiction and merely enacts the language of such statute into the law of the jurisdiction to be governed thereby. In such cases, while the construction theretofore given such statutes might be persuasive, yet we know of no rule, nor can we

see any sufficient reason, why such construction in such cases should be absolutely controlling. But in this case the act of Congress expressly put in force *certain statutes of Arkansas.* This, in the very nature of the language used, would logically carry with such statutes the meaning, force, and effect previously given thereto by the Supreme Court of Arkansas. This rule has been settled and followed by this court in *National Live Stock Commission Company v. Taliaferro,* 20 Okla. 177, 93 Pac. 983; *Hawkins v. U. S.,* 3 Okla. Cr. 651, 108 Pac. 561. Also in *Blaylock v. Incorporated Town of Muskogee,* 117 Fed. 125, 54 C. C. A. 639, where the identical question presented here—the liability of a town of the Indian Territory for damages resulting from negligence—was before the court.

Mr. Justice Sanborn in rendering the opinion of the United States Circuit Court of Appeals says:

"When this chapter (chapter 29, Mansf. Dig.) was made a part of the laws of the Indian Territory by the act of Congress of May 2, 1890, it was therefore the established rule in the state of Arkansas, settled by the uniform decisions of its highest judicial tribunal, that corporations empowered to make and maintain streets and sidewalks under this statute were not liable to individuals for injuries caused by defects in them, or by the negligence of the corporation in the exercise of this power. The decisions of the Supreme Court of Arkansas, which established this rule, were not determinations of questions of general or commercial law, but they were the interpretation of the local law—of the local statutes of the state of Arkansas—which measured the powers and liabilities of municipalities in that state. The federal courts uniformly follow the construction of the Constitution and statutes of a state announced by its highest judicial tribunal in all cases that involve no question of general or commercial law, and no question of right under the national Constitution and the acts of Congress. The character and limits of the powers and liabilities of the political or municipal corporations of a state are questions of local law, upon which the decisions of the Supreme Court of the state are authoritative in the national courts, because these questions are determinable by a construction of the Constitution and statutes of the state under which the municipalities are organized."

The foregoing authorities must control in the case at bar, and such being the law the plaintiff in error is precluded from recovery. Having failed in his pleadings and evidence to show wherein the city of Ardmore was legally liable for the injuries complained of, it was not error for the court below to sustain defendant's demurrer to the case and instruct the jury to return a verdict for defendant.

We presume this case was tried upon the theory that the statutes of Oklahoma were in force, and that under the Oklahoma statutes he had a right of action for the injuries received. If this theory were correct, we might hold the ruling of the district court to be erroneous, but we cannot agree that such theory is correct. Section 1 of the Schedule of the Constitution provides:

"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place."

Under this provision of the Constitution, whatever rights the plaintiff may have had prior to the time of the adoption of the Constitution and statutes of Oklahoma, they were preserved by such constitutional provision, but they were neither abridged nor enlarged thereby. They remained the same as though no change had been made. Nor were any new rights created thereby for acts or matters which occurred prior to their adoption for which no right of action was provided by the law in force prior to statehood. Therefore, the law of Arkansas being in force at the time of the alleged acts of negligence of defendant and at the time of the alleged injuries resulting therefrom, and such laws providing no liability on the part of defendant for the acts complained of, and such laws having been construed to mean that defendant was not liable in such cases, we must hold that plaintiff had no right of action in the premises and that the ruling of the district court sustaining defendant's demurrer and directing a verdict was correct.

The judgment, therefore, should be affirmed.

By the Court: It is so ordered.